CARL ELMER HENRY BADER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bader v. Commissioner
Docket No. 3454-71
United States Tax Court
T.C. Memo 1973-169; 1973 Tax Ct. Memo LEXIS 114; 32 T.C.M. (CCH) 813; T.C.M. (RIA) 73169; August 6, 1973, Filed Carl Elmer Henry Bader, pro se. Eugene H. Ciranni, for the respondent. HALL MEMORANDUM FINDINGS OF ACT AND OPINION HALL, Judge : Respondent determined a $175,458 deficiency in petitioner's 1966 Federal income tax. The *115 issue for decision is whether Charles Weir, who transferred to petitioner approximately $290,783 in cash from various bank accounts held in joint tenancy with his wife, was mentally competent at the times of the transfers to make valid inter vivos gifts. If Charles was competent, the cash petitioner received from Charles 2 is excludible from petitioner's 1966 gross income as a gift under section 102(a). [1] On the other hand, if Charles was not competent to make a gift, the cash received is includible in petitioner's 1966 gross income under section 61(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner resided in San Francisco, California when he filed his petition. He and his then wife, Armida S. Bader, filed a joint 1966 Federal income tax return with the district director of internal revenue at San Francisco. Petitioner was unemployed during most of 1966 and has remained unemployed since then. He has not filed either Federal or State income tax returns since 1966. Charles and Juliana Weir (hereinafter "Charles" and *116 "Juliana"), husband and wife, were friends of petitioner, unrelated to him by either blood or marriage. In 1966 Charles was 74 years old and Juliana was 59 years old. In the latter part of 1966, Charles transferred to petitioner $290,783 in cash from various bank accounts which he held in joint tenancy with Juliana. Charles 3 and Juliana did not file a 1966 Federal gift tax return. Charles has had poor mental health for many years. In the summer of 1947 he had had an abrupt onset of loss of memory, and was unable to recall his name, address, home telephone number or his wife's name. In March 1948 he suffered a memory loss similar to that suffered in 1947. The doctor who treated Charles from September 1966 until April 1967 diagnosed his primary problem as arteriosclerotic cerebrovascular disease. That doctor reported that Charles could not be expected to become rational again and was incompetent to manage his own affairs. In April 1967 Charles was suffering from senile psychosis. He required 24 hour a day supervision, could not recognize his wife or his doctor, could not remember where he lived and was in a continual state of mental confusion. Charles was incompetent *117 when he made the cash transfers to petitioner in 1966. Juliana was also mentally incompetent in 1966. Sometime in 1961 she ceased to be able to read or write. Her disabilities markedly increased in 1963. Sometime in 1966 she lost her power of speech. On October 7, 1966, she was suffering from a general mental deterioration and was unable to perform bodily functions or feed herself. The doctor who treated her from September 1966 to April 1967 diagnosed her condition as presenile sclerosis and considered her 4 incompetent to manage her affairs. Sometime in 1966, petitioner introduced Charles and Juliana to his attorney for the purpose of preparing their wills. On August 19, 1966, their wills were prepared and executed. Each will provided that upon the death of the testator, his or her estate was to be held in trust for the benefit of his or her spouse, and upon the death of the spouse (or if or she predeceased the testator), all remaining property was to pass to petitioner and his mother. Petitioner was named executor and his mother was named successor executrix. Juliana, who had once been literate, signed her will, not with her signature, but with an "X." On March 3, 1967, petitioner *118 petitioned the San Francisco Superior Court to be appointed conservator of the person and estate of Charles, alleging that Charles was "unable to properly care for himself or for his property." In his petition, petitioner estimated the value of Charles' estate to be $281,421.05. On March 23, 1967, the court appointed petitioner conservator of Charles' person and estate. At approximately the same time, petitioner was also appointed conservator of Juliana's person and estate. On December 6, 1967, the court suspended petitioner's powers to act as conservator of Charles' and Juliana's persons and estates. The record does not indicate 5 the reason for such suspension. Thereafter, one of Juliana's relatives was appointed successor conservator to both estates. Charles died on February 12, 1968. Shortly thereafter, Juliana's relatives instituted four legal actions against petitioner. The first two were objections to the conservator's (petitioner's) second and final accountings and amendments thereto for Charles' and Juliana's estates. The third contested Charles' will and opposed petitioner's offer for probate of that purported will. The final legal action sought the return *119 of all property transferred by Charles to petitioner during and after 1966. The complaint in this latter suit alleged that Charles and Juliana were "ill, infirm, imcompetent and incapable of managing" their affairs, and that petitioner obtained the assets by fraud, deceit, undue influence, breach of confidential relationship or false representations. Charles' physician filed a declaration in this action wherein he stated that in his opinion, Charles Weir from and after at least July 1966 was by reason of disease and weakness of mind and other causes unable, unassisted properly to take care of himself and his property and by reason thereof was likely to be deceived or imposed upon by artful or designing persons. All these matters were settled in 1969 pursuant to an Agreement whereby petitioner, among other things, agreed to return 6 all the assets which Charles had transferred to him which were located in the United States ($77,611) and was permitted to retain all such assets which were located in Mexico. In addition, petitioner and his mother assigned to Juliana's heirs their rights, interests and expectancies under the wills of Charles and Juliana.
In his joint 1966 Federal *120 income tax return, petitioner reported gross income of $5,082, consisting of $3,248 wages and $1,834 interest. In the notice of deficiency, respondent determined that during 1966 petitioner had received $290,783 in cash from Charles, and that such funds were includible in petitioner's 1966 gross income under section 61(a). OPINION Petitioner contends that Charles was mentally competent to make gifts in 1966 when Charles gave him approximately $290,783 in cash, and that such gifts are excludible from his 1966 gross income under section 102(a). Respondent, on the other hand, contends that Charles was not mentally competent to make gifts when he transferred the cash to petitioner, and that the cash acquired by petitioner is income within the meaning of section 61(a). We agree with respondent. Section 102(a) excludes from gross income "the value of property acquired by gift." One of the essential elements of a bona fide gift inter vivos is the donor's competency to make the gift. ; , affirmed (C.A. 5, 1936), certiorari denied . *121 Petitioner, while contending that Charles was legally competent to make valid inter vivos gifts, nevertheless stipulated to documentary evidence which indicated that the time of the transfers Charles was mentally incompetent. Moreover, statements submitted by several of Charles' friends, although laymen and not medical experts, support the finding that Charles was senile and of unsound mind in 1966. One friend, who worked with Charles as a stockbroker from 1928 to 1963, estimated that Charles' mental aberration began in 1960, at which time he became confused and disoriented. Charles was asked to resign as a stockbroker in 1963 due to his general mental condition. In early 1967 petitioner had himself appointed conservator of Charles' person and estate. In his petition for such appointment, petitioner declared that Charles was "unable to properly care for himself or for his property." In accordance with petitioner's petition, the court appointed him conservator of Charles' person and estate on March 23, 1967. In addition to the stipulated documentary evidence, petitioner testified that Charles "was senile." 8 We conclude that at the time of the transfers of cash by *122 Charles to petitioner, Charles was mentally incompetent and lacked the essential mental capacity to make valid inter vivos gifts. Consequently, the cash petitioner received from Charles in 1966 was not excludible from petitioner's 1966 gross income as "property acquired by gift" under section 102(a). On the contrary, the approximately $290,783 cash received by petitioner is includible in his 1966 gross income under section 61(a) because it was within his complete dominion and control at all times after the transfers. In 1969, pursuant to the legal actions instituted in 1968 against petitioner by Juliana's relatives, petitioner entered into an Agreement with Juliana's relatives whereby the parties agreed that petitioner would retain all of Charles' assets which he had transferred to Mexico and would transfer to Juliana's relatives all the assets which still remained in the United States, and petitioner would assign to Juliana's relatives all his rights, interests and expectancies under Charles' and Juliana's wills. The value of the assets returned in 1969 was $77,611. The fact that petitioner in 1969 had to give up part of the property which *123 he had received from Charles in 1966 does not preclude the inclusion in his 1966 gross income of the entire amount received in 1966 which continued in his unfettered 9 dominion and control during 1966. The money was originally received under a claim of right.The fact the claim eventually proved unfounded does not preclude taxability in the year of receipt. . [2]
Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the year in issue. ↩
2. Petitioner may be entitled to a refund for 1969 under the provisions of section 1341(b) (1). ↩